UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SPEROS A. BATISTATOS,<br><br>Plaintiff,<br><br>v.<br><br>LAKE COUNTY CONVENTION AND VISITORS BUREAU d/b/a/ SOUTH SHORE CONVENTION AND VISITORS AUTHORITY *et al.*,<br><br>Defendants. | CAUSE NO. 2:22cv254 DRL-JEM<br>            2:25cv71 DRL-JEM |

## OPINION AND ORDER

After his employment contract with the South Shore Convention and Visitor's Authority (SSCVA) ended, Speros Batistatos sued a host of defendants. On February 13, 2025, the court (through another presider) dismissed his concerted action claim (count 8) and severed his claims against three defendants, including defamation (counts 5 and 6) and injurious falsehoods (count 7), into a separate action. This presider inherited both cases. Maybe a new judge would see it differently, so Mr. Batistatos thereafter asked the court, in both cases, to reconsider everything— the prior order dismissing the concerted action claim and severing counts 5-7 as well as the order dismissing the severed case for lack of subject matter jurisdiction. The court denies the motion to reconsider the dismissal of the concerted action claim and defers ruling on the severance (and related dismissal of the second suit) pending a hearing with all parties.

## BACKGROUND

After some rounds of pleadings and motions, Mr. Batistatos filed a second amended complaint in September 2024 against the SSCVA and its board members, Brent Brashier,

Matthew Maloney, Andrew Qunell, Thomas Dabertin, and Matthew Schuffert, and then also the City of Hammond, Left of Center Media, LLC, and Mayor Thomas McDermott, Jr. He brought eight claims in total, all stemming from his employment and eventual termination as president and chief executive officer of SSCVA.

According to the second amended complaint, on February 21, 2021, the SSCVA received approximately $388,500 from the federal paycheck protection program (PPP)—a government initiative during the COVID-19 pandemic to assist with small businesses, non-profits, and other entities [145 ¶ 85]. This time period coincided with efforts by Mr. Batistatos and the SSCVA to renegotiate his employment contract [*id.*].

As alleged, during a May 20, 2021 executive session, the SSCVA board illegally discussed and a majority of the board voted to award "no strings attached" grants of the PPP money to 15 municipalities [*id.* ¶ 88-89]. Mr. Batistatos informed the board that the executive session violated Indiana's open door law [*id.* ¶ 93]. He says the board then engaged in other conduct that violated federal and state laws, and the board's own bylaws, including by the eventual distribution of these PPP funds [*id.* ¶ 94-127].

More particular to today's motions, Mr. Batistatos brought what he called a concerted action claim against all defendants [*id.* ¶ 258-62]. As alleged, Mayor McDermott of the City of Hammond, a potential grantee of PPP funds, publicly stated he would drop a lawsuit against the SSCVA if the SSCVA fired Mr. Batistatos [*id.* ¶ 130]. Mayor McDermott co-owned Left of Center Media, which operated a podcast that he hosted [*id.* ¶ 32-34]. Mr. Batistatos alleges that SSCVA (through its board) stopped negotiating a renewal of his employment contract and relieved him of his duties after Mayor McDermott's invitation [*id.* ¶ 130-141].

According to the pleading, all SSCVA board members knowingly participated in and condoned this decision [*id.* ¶ 138]. After Mayor McDermott's proposal, Mr. Batistatos's termination, and disbursement of the PPP funds, Mayor McDermott dismissed the suit against SSCVA [*id.* ¶ 141]. Mr. Batistatos says this exchange of his termination for cause (when none existed) for a dismissal of the lawsuit the City of Hammond filed against the SSCVA constituted a "concerted action" that violated the duty of good faith and fair dealing [*id.* ¶ 258-62].[1]

In this federal action, all defendants sought dismissal of the concerted action claim. On February 13, 2025, Judge Joseph S. Van Bokkelen, the previous presider, granted the requests. *See Batistatos v. Lake Cnty. Convention & Visitors Bureau et al.*, 2025 U.S. Dist. LEXIS 27070, 3-11 (N.D. Ind. Feb. 13, 2025). The court found that Mr. Batistatos failed to plead a plausible basis for this kind of claim against any one defendant. The court severed the remaining claims (counts 5-7) against the Hammond class of defendants (including Left of Center) into a separate action because, without the concerted action claim, the case contained no common question of fact or law linking all defendants. *Id.* at 13-15.

SSCVA and its board members remained defendants in one action (2:22cv254), and the severed action involved the claims against the City of Hammond, Mr. McDermott, and Left of Center (2:25cv71). After reassignment of both actions to this presider, the court dismissed the severed action for lack of subject matter jurisdiction, as that case then contained only state law claims against nondiverse parties. *See Batistatos v. City of Hammond et al.*, 2025 US. Dist. LEXIS 147107, 7 (N.D. Ind. July 31, 2025). Mr. Batistatos filed motions to reconsider in each case,

---

[1] The second amended complaint isn't clear as to who exactly filed this lawsuit. At some points, Mr. Batistatos suggests it was brought by Mayor McDermott; at others, that it was jointly filed by Mayor McDermott and the City of Hammond, and elsewhere, that the City of Hammond alone was the plaintiff [*see id.* ¶ 110, 130, 141, 195, 260-61]. This nuance ultimately has no bearing on today's decision.

3

seeking reconsideration of the court's dismissal of the concerted action claim and severance of the action last year and the order dismissing the severed action. All defendants in both actions oppose it. Save for certain modest differences, the reconsideration briefing in the one case largely mirrors that in the other case, so the court addresses the motions together.

## STANDARD

The parties debate what rule governs these motions. Though not explicitly named as such by the Federal Rules of Civil Procedure, *see Hope v. United States*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994), courts typically entertain requests for reconsideration under Rules 54(b), 59(e), and 60, depending on the stage of the case and the relief sought, though the court has inherent power to revisit any interlocutory order too, *see, e.g., Smith v. Massachusetts*, 543 U.S. 462, 475 (2005); *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985). The rules change per issue.

To the extent the motions harken to the prior order in the original action (2:22cv254) that dismissed the concerted action claim or severed the cases, they aptly fit within the court's inherent authority under Rule 54(b). "Vacating a judgment under Rule 60(b) is permissible for a variety of reasons including mistake, excusable neglect, newly discovered evidence, and fraud," *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) (internal citation omitted)—none of which have been asserted here—and the rule contemplates a "final judgment, order, or proceeding"—one not at issue here. Fed. R. Civ. P. 60(b); *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015); 11 Wright & Miller, *Federal Practice and Procedure Civil* § 2852 (3d ed. 1998). In contrast, under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

To the extent the one reconsideration motion concerns the dismissal of the severed action (2:25cv71), Rule 59(e) governs because Mr. Batistatos filed the motion within 28 days of the court's entry of judgment, and he argues its afforded relief. *See* Fed. R. Civ. P. 59(e); *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014) (timing); *Obriecht v. Raemisch*, 517 F.3d 489, 493-94 (7th Cir. 2008) (substance). This rule "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quotation omitted). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington*, 433 F.3d at 546. It remains an extraordinary remedy reserved for the exceptional case, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015), and it is not "a vehicle for a party to undo its own procedural failures . . . [or to] introduce new evidence or advance arguments that could and should have been presented" before judgment, *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quotation omitted).

In either, the court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (citation omitted), or merely because a new judge now presides. Though never presuming to be infallible, the court reaches decisions deliberately, so motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 526 (N.D. Ind. 2009). More particularly, a motion to reconsider is appropriate when the court patently misunderstands a party, or makes a decision outside the adversarial issues presented by the parties, or makes an error of apprehension (not of reasoning), or when the motion addresses a controlling or significant change in the law or facts since submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d

5

1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id*. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (quotations and citation omitted).

## DISCUSSION

A. *Dismissal of Concerted Action Claim (Count 8).*

Judge Van Bokkelen issued a thoughtful ruling dismissing what had been presented as a concerted action (civil conspiracy) claim. Mr. Batistatos sees error in the prior order's handling of the law governing this claim and incomplete nods to his second amended complaint. He also argues that new evidence requires reconsideration today. The court addresses these in turn.

In dismissing the claim, the court held that the second amended complaint failed to plead a plausible basis for saying all defendants engaged in common tortious conduct, or otherwise acted wrongfully, and for saying an agreement existed among the defendants to breach a duty of good faith and fair dealing. In Mr. Batistatos's view, this was wrong. He argues liability for a concerted action may attach even when a conspirator didn't personally engage in tortious conduct or directly cause an injury, so long as the conspirator participated in the collective scheme to commit an unlawful act. According to him, that act here was the breach of the duty of good faith and fair dealing that led to his termination.

A civil conspiracy "is defined as a combination of two or more persons [who take] concerted action [] to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 653 (Ind. Ct. App. 2014); *see also Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966). To be clear, this presents as a bit of a misnomer because "there is no cause of action for conspiracy

6

as such," but instead "for damage resulting from a conspiracy." *Indianapolis Horse*, 217 N.E.2d at 628; *accord Bd. of Purdue Univ. v. Eisenstein*, 87 N.E.3d 481, 498 (Ind. Ct. App. 2017).

Ultimately, when push comes to shove to prove this claim, a plaintiff must establish (1) an object to be accomplished, (2) a meeting of the minds on the object or course of action, (3) one or more overt acts, and (4) damages proximately caused by those acts. *Carmichael v. Separators, Inc.*, 148 N.E.3d 1048, 1058 (Ind. Ct. App. 2020). Though an agreement among the parties is a necessary element, "such agreement need not extend to all the details of the conspiratorial scheme." *Id.* at 1058-59. A "civil conspiracy may be asserted through circumstantial evidence or by averment of isolated or independent facts susceptible of an inference of concurrence of sentiment." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014).

Of course, these reconsideration motions materially revisit the pleading stage in which a plaintiff must just allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2); *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). There the court begins, noting that Indiana doesn't recognize a free-floating claim for concerted action. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994). Instead, the claim "must be considered together with an underlying alleged tort." *Holland v. Ketchum*, 181 N.E.3d 1030, 1039 (Ind. Ct. App. 2021); *see also Birge v. Town of Linden*, 57 N.E.3d 839, 846 (Ind. Ct. App. 2016); *K.M.K. v. A.K.*, 908 N.E.2d 658, 663-64 (Ind. Ct. App. 2009).

At the same time, the court appreciates one point of the reconsideration motions—that even those who agree in the commission of a tort can be held liable with the party directly committing it, though various "wrongful or contemptuous acts" conjoin to cause the damages

or promote the conspiracy's aim. *Boyle v. Anderson Fire Fighters Ass'n Local 1262*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986). After all, two or more persons might engage in concerted action to accomplish an unlawful purpose, or they may accomplish some lawful purpose through various unlawful means, and in either be held jointly liable, regardless of their respective degree of active participation. *KS&E Sports v. Runnels*, 72 N.E.3d 892, 902 (Ind. 2017); *Carmichael*, 148 N.E.3d at 1059-60; *SJS Refractory Co. v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 769 (Ind. Ct. App. 2011).

For instance, firefighters engaged in an illegal strike as they negotiate a new public contract might each face a civil conspiracy claim for damages caused to a burning building, though some take the wrongful step of refusing their duty to help, and others take even more contemptuous steps of actively interfering with those who show to fight the fire. *See Boyle*, 497 N.E.2d at 1078-83. In contrast, two lawyers could not be held jointly liable in civil conspiracy with a company owner who allegedly bilked investors of their money, though they prepared documents and participated in meetings with investors that assisted the bad actor, because at most they performed lawful work for a lawful purpose, and nothing showed they acted unlawfully or otherwise participated in soliciting investments, even if the owner acted nefariously. *Rosenbaum v. White*, 692 F.3d 593, 606 (7th Cir. 2012) (Indiana law); *accord Bottoms v. B&M Coal Corp.*, 405 N.E.2d 82, 90-91 (Ind. Ct. App. 1980) (union members who jointly destroyed company property in an orchestrated raid could be held liable for civil conspiracy, though union, whose officer made only an ambiguous threat, could not without evidence he participated in the conspiratorial aim).

Assuming that, to have a conspiracy claim, all participants must engage in the very same tort would be too great a straitjacket on Indiana law. Not every participant must even directly cause the injury, *see Buchanan v. Vowell*, 926 N.E.2d 515, 521-22 (Ind. Ct. App. 2010), but each conspirator must act with the others in such a concerted way that it ultimately concludes in the

commission of an independent tort. In short, either there must be an unlawful purpose or unlawful means—that object or course of action where minds must meet. *Indianapolis Horse*, 217 N.E.2d at 628; *Carmichael*, 148 N.E.3d at 1058; *Crystal Valley*, 22 N.E.3d at 653. In this, a line of Indiana decisions emphasizes that each defendant must do something wrongful or contemptuous in aid of accomplishing the conspiracy's overall objective. *See Springbrook Vill. Batesville LLC v. Southeast Ind. Title Inc.*, 195 N.E.3d 398, 406 (Ind. Ct. App. 2022), *trans. denied*, 208 N.E.3d 1255 (Ind. 2023); *Crystal Valley*, 22 N.E.3d 646 at 653-54.

*Crystal Valley*, 22 N.E.3d 646 at 653-54, held that the trial court properly dismissed a civil conspiracy claim when a company's pleading failed to identify any wrongful act that two individuals and two other businesses committed as part of a conspiracy with the company's former employee to unlawfully divert business to a competitor. The Indiana Court of Appeals emphasized that, to state a plausible claim for civil conspiracy, and one tied to another's breach of fiduciary duty, "the complaint must allege some unlawful act underlying the defendants' concerted action. In other words, it is not enough that the alleged conspirators acted in concert and that the result amounted a breach of a contractual or fiduciary duty by one of them…rather…there must be some intentional underlying act of wrongdoing by each of the coconspirators." *Id.* "This is not to say that each alleged conspirator must participate at an equal level, for rarely would that be the case in any conspiracy. Nevertheless, at a minimum, the plaintiff must put each defendant on notice of the unlawful act that [he] is alleged to have agreed to commit." *Id.* at 654.[2]

---

[2] The court acknowledges that *Crystal Valley* built on *Winkler* in which the underlying tort for the civil conspiracy claim was tortious interference with a contract and thus necessarily called for wrongful action. But *Crystal Valley* was not hinged on tortious interference, as it concerned breaches of fiduciary duty and duty of loyalty. *Crystal Valley*, 22 N.E.3d 646 at 653. Today's case likewise concerns a breach of fiduciary duty, and one owed only by SCVAA. *See Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003) (holding that the implied covenant

Similarly, *Springbrook*, 195 N.E.3d at 401-02, 406, dismissed a concerted action claim against two title companies that participated in closing a land purchase between a hospital and landowner after the hospital allegedly interfered with another buyer's deal and effectively cut the original buyer out. *Springbrook* noted that Indiana law followed the Restatement (Second) of Torts § 876, which in three separate forms all required something wrongful by way of the conspirator's conduct or purpose, whether by the Restatement's express language or by the gloss given to it by Indiana law. *Springbrook*, 195 N.E.3d at 406. Either a conspirator commits a "tortious act;" knows the other's conduct constitutes a breach of duty and substantially assists or encourages that breach, and in so doing acts with the intent to commit a tort (or with negligence); or substantially assists another in accomplishing a tort through his own conduct that, separately considered, constitutes a breach of duty to the third person. *Id.* (citing and discussing Restatement § 876).

At first glance, these may seem hard to square with the notion that "each participant in the conspiracy may be held responsible as a joint tortfeasor for damages caused by the wrongful and contemptuous acts regardless of the degree of active participation," *KS&E Sports*, 72 N.E.3d at 902, until one asks what it means to become a participant. One still must participate, and nothing in the law suggests this can be achieved through mere naïve or innocent dawdling. Even Mr. Batistatos's favored case, *Boyle*, 497 N.E.2d at 1079, involved each firefighter engaging in an unlawful strike—what the court there called "their concerted misconduct." No one firefighter acted blamelessly. And *KS&E Sports*, 72 N.E.3d at 902-03, which recited language from *Boyle*, affirmed a dismissal of a civil conspiracy claim precisely because one defendant had not been

---

of good faith and fair dealing gives rise to a breach of fiduciary duty claim); *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) ("Indiana courts have recognized an implied covenant of good faith and fair dealing only in limited circumstances involving employment contracts and insurance contracts.").

10

alleged to be "part of the unlawful agreement" and could not be seen, through his conduct, to be unlawfully participating within the conspiracy's scope.

The lesson of these cases (and others) is that each conspirator must do something wrongful or contemptuous in aid of the conspiracy either by way of its unlawful purpose or unlawful means, just as Indiana law has long held. *See Indianapolis Horse*, 217 N.E.2d at 628. To be clear, each conspirator's conduct need not be alone "tortious." But each person must wrongfully promote the conspiracy's aim in accomplishing an underlying tort. Else the parties in *Crystal Valley* and *Springbrook*, *supra*, *could* have been held subject to a civil conspiracy claim when they were not. Else the lawyers in *Rosenbaum*, 692 F.3d at 606, *could* have been held liable for civil conspiracy, if mere guileless aid were enough, but they were not. Else the husband in *Holland*, 181 N.E.3d at 1039, *could not* have been held liable for civil conspiracy when only his wife committed the fraudulent transfer of assets, except that he knew of his wife's debt and wrongfully joined her by taking joint title to property using the $200,000 that she was endeavoring to protect from collection. Else the appraisers, who committed no independent tort but who grossly inflated their appraisals to induce mortgage lenders to provide loans in excess of fair market values, *could not* have been held answerable for a civil conspiracy claim when they were in *Watkins v. Penn*, 2007 U.S. Dist. LEXIS 87370, 10-12 (S.D. Ind. Nov. 26, 2007) (Tinder, J.).

So, in a manner of speaking, Mr. Batistatos turns out to be both right and wrong. The prior order at times alludes to each member in the conspiracy taking a tortious action, perhaps one lens of many, though alone too narrow a statement. But it would be unfair to read the prior order as analyzing or saying merely this, for the order also thoughtfully considered whether the pleading presented any facts that would plausibly indicate that each of the alleged conspirators

otherwise participated wrongfully in aid of the conspiracy. Thus, the error of law that Mr. Batistatos posits for reconsideration fails to account for the entirety of the prior order.

From here, the reconsideration motions often just rehash arguments that Judge Van Bokkelen ably considered and resolved, and doing so having catalogued in his order all the operative allegations from the second amended complaint. The good judge didn't miss a one. Repeating the same arguments, much less to a new presider, isn't an appropriate avenue for reconsideration. *See Ahmed*, 388 F.3d at 249. Though the law permits the court to exercise its discretion to reconsider earlier interlocutory orders, *Cont'l Vineyard, LLC v. Vinifera Wine Co., LLC*, 973 F.3d 747, 759 (7th Cir. 2020), when a transfer between district judges occurs "midway through litigation, the law [] discourages the new judge from reconsidering rulings made by the previous judge," *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022); *see also Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005) ("Generally speaking, a successor judge should not reconsider the decision of a transferor judge at the same hierarchical level of the judiciary[.]"). This presider today should do so only "if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *HK Sys. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) (quotations and citation omitted).

This standard for reconsideration post-transfer has not been met. The court reviewed the arguments at the time of the original motion before Judge Van Bokkelen and the arguments that Mr. Batistatos wants to make today. In 2024, Mr. Batistatos argued that each defendant needed to be a participant. But, alone, that seems unfinished as Indiana law has developed civil conspiracy, so no wonder that this failed to inspire Judge Van Bokkelen to keep this claim. Mr. Batistatos also argued in 2024 that a *quid pro quo* was unlawful in its own right—exchanging his

12

termination for the dismissal of a lawsuit—though he simply said this twice (in a single sentence each) without citing any authority or developing why that might be so on this pleading. Merely using the word "wrongful" in a pleading doesn't alone make it plausibly so. Settlements of lawsuits occur all the time with all types of *quid pro quo* (consideration) without that fact alone indicating anything wrongful or contemptuous, much less unlawful in its design. What the prior order evaluated was what in the pleading plausibly made this exchange wrongful by the Mayor (or City of Hammond), either in purpose or means. Mr. Batistatos gave no real answer to this. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (party presentation rule); *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (parties must construct arguments). Once more, the court wonders whether any presider would have made a different call with such a terse presentation, not least in light of *Crystal Valley*, 22 N.E.3d 646 at 653-54, and *Springbrook*, 195 N.E.3d at 406, which his reconsideration motions only partially address.

The second amended complaint plausibly pleads that Mayor McDermott and Mr. Batistatos were archenemies, even that Mayor McDermott made disparaging comments about Mr. Batistatos during his podcasts or otherwise gave scathing critiques of him as a steward of public funds. As the lynchpin to a concerted action claim, though, the second amended complaint alleged that Mayor McDermott, aware of Mr. Batistatos's employment relationship with SSCVA, "stated publicly" that he would drop a lawsuit against the SSCVA if Mr. Batistatos lost his job [145 ¶ 130]. He later alleges that they "wrongfully agreed," and that SSCVA termed his employ in breach of its fiduciary duty in a "concerted action" with all defendants [*id.* ¶ 260-61].

Whether the last bits could be called something more than conclusory recitations of the elements of a concerted action claim and could then eke by the pleading standard—and that seems readily in doubt—the court still isn't left with a strong and reasonable conviction that the

13

earlier ruling got it wrong. Why such a public statement suggests that Mayor McDermott agreed to participate in a concerted action to achieve a tort that violated only someone else's duty to Mr. Batistatos (that is, that the Mayor acted with a wrongful purpose), or that he pursued any unlawful means, or that he knew that SSCVA's conduct would constitute a breach of duty and substantially aided or encouraged that breach with the intent to commit a tort, is left unspoken by this pleading. Politicians make promises in public all the time without meaning that, each time someone else acts, they all now have conspired in that end result. It seems any PPP funds had already been distributed such as to eliminate this as a motivation (an alternative wrongful purpose) [*id.* ¶ 131]. And, in the very next breath, the pleading says two board members began planning action against Mr. Batistatos, not because of anything the Mayor said, but in response to Mr. Batistatos's own email claiming that board members were acting unlawfully [*id.* ¶ 132-33]. Parties may plead in the alternative, but a single public statement fails to carry enough water to plead plausibly that the Mayor (or the City of Hammond or Left of Center) entered into and then participated in a conspiracy. And just because, sometime after Mr. Batistatos lost his job, the lawsuit was dismissed doesn't plausibly mean that they were tied together, much less that Mayor McDermott participated in a conspiracy of this ilk.

There is also something rather troubling about these reconsideration motions. If Mr. Batistatos really thought a so-called error of law was clear, he could have filed his new motion back in February or March 2025 before the original presider, and before this remaining federal case neared its finish of discovery and approached summary judgment (putting aside the new state case for the moment). Litigants have a "rightful expectation" that "a change of judges midway through a case will not mean going back to square one." *Brengettcy*, 423 F.3d at 680 (quotations and citation omitted).

Though unintended this way, Mr. Batistatos's reference to what he calls new evidence only helps to make today's point, though, as a partially new issue presented only to this presider, the concerns about pivoting midstream are less. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 903 (7th Cir. 2010). For the concerted action claim, he offers the depositions of two SSCVA board members, Andrew Quenell and Matthew Schuffert. They were taken on May 21, 2025 and June 12, 2025. He says they reveal facts that the Mayor (and City of Hammond) plausibly participated in concert to terminate his employment in bad faith.

But both depositions deflate a conspiratorial theory or the Mayor's aid of one rather than breathes new life into it. Though both board members testified that Mayor McDermott wished for Mr. Batistatos's termination, or otherwise demanded or commented about exchanging the lawsuit for his termination (to one in private and one surfacing publicly some way) [189-3 Tr. 45-48; 189-4 Tr. 64], one member confirmed this exchange never happened [189-3 Tr. 46-47, 51]. In his words, this was never going to happen because the Mayor did not get to decide whether Mr. Batistatos worked for SSCVA or not. On one hand, this testimony reaffirms what was materially alleged in the complaint and what the previous presider accepted as true when ruling on the motion to dismiss, so offers nothing really new. To the extent it offers anything new, the mere fact that a comment may have occurred in private rather than public doesn't change the result, whereas SSCVA's rejection of the pitch altogether suggests no concerted action occurred. Even if Mr. Batistatos sought leave to amend, in lieu of reconsideration, he has not offered facts in briefing that could be translated into a plausible concerted action claim. At most, the testimony only expands on allegations the court—now twice—considered and rightfully found insufficient, or the testimony works against him. The additional evidence doesn't warrant reconsideration.

From there, Mr. Batistatos turns to concerted action by just the board members. But in this, he proposes an entirely different scope of conspiracy. He would supplant (as pleaded) the concerted action by all defendants to induce the board members to breach their fiduciary duty by terminating his employment in exchange for the dismissed lawsuit to concerted action by only five board members to breach their fiduciary duty. *See KS&E Sports*, 72 N.E.3d at 903 (finding conspiracy's pleaded scope to be "limited" and covering only the parties pleaded as having agreed to and participated in that scope). Mr. Batistatos has enjoyed plenty of opportunities to get the storyline of a conspiracy straight. On this second amended complaint, the theorized concerted action depends on agreement and participation by everyone, including the Mayor and City of Hammond. He has not pleaded a separate conspiracy solely among the board members, even if, as the only decisionmakers for SSCVA, they could jointly conspire to cause their agency to breach its fiduciary duty to Mr. Batistatos.

Perhaps realizing this, he comes armed with new evidence he says warrants reconsideration. The court agrees with the prior order that nothing in the second amended complaint tied any allegations of defamation by the Mayor to the idea that he aided or participated in a concerted action to terminate Mr. Batistatos' employ. To be sure, a "complaint may not be amended by the briefs in an opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), but the court may consider "additional facts" in a brief opposing dismissal "so long as those facts are consistent with the pleadings," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (citation omitted); *see, e.g., Jones v. Sparta Cmty. Hosp.*, 716 F. Appx. 547, 547 (7th Cir. 2018). Nothing presented to Judge Van Bokkelen moved that needle. And nothing Mr. Batistatos presents anew today really changes anything.

16

He offers evidence that the board sought assistance from outside counsel to renegotiate the employment agreement and formed a compensation committee, which conducted a study [191]. This apparently occurred after certain allegedly defamatory statements. He also points to an email exchange in which some undisclosed false assertion tied to an open records request by the Mayor prompted board members to ask questions [190]. What few facts this adds to the record, it adds nothing of import.

For one, that SSCVA hired outside counsel and formed a compensation committee were already alleged in the second amended complaint. This isn't new. And nothing about that would plausibly suggest that the Mayor (or the City of Hammond or Left of Center) acted in concert with the SSCVA board members by way of an entirely different conspiracy—in effect, you defame him while we use that to terminate him. Whether this could speak to damages from any defamation, it cannot speak to a different scope of conspiracy.

For another reason, Mr. Batistatos vaguely references "false assertions related to a FOIA request" by the Mayor. What were these false assertions? He never specifies; and his new exhibits never reveal any; and he never ties these to concerted action that might drive a new theory of a conspiracy. Whether this was a request under the Freedom of Information Act (FOIA), reserved for federal agencies, or really a request under the Access to Public Records Act (APRA), to acquire Indiana public records, making such a request isn't wrongful or contemptuous or otherwise indicative of an agreement to promote a tort. *See* 5 U.S.C. § 552; Ind. Code § 5-14-3-1 *et seq*. Expression of an opinion that Mr. Batistatos made too much money would not likely sustain a defamation claim, much less develop a plausible claim of concerted action.

In the end, these allegations describe at most a chronology—that the Mayor made comments critical of Mr. Batistatos's compensation, and that the board members took steps in

17

response—not that they plausibly agreed to act in concert in the ultimate commission of a tort. *See Carmichael*, 148 N.E.3d at 1058 (requiring meeting of the minds). Mr. Batistatos today offers really nothing more than the same conclusion that he offered to Judge Van Bokkelen. The fact that one event may have precipitated another does not, without more, permit the inference of a conspiracy. It leaves the prior order's findings soundly intact, with only modest reunderstanding here. The court denies the motions to reconsider accordingly.

      B.  *Severance of Claims against the Mayor, the City of Hammond, and Left of Center*

Mr. Batistatos asks the court to reconsider severance of his claims for defamation (counts 5 and 6) and injurious falsehoods (count 7) against the Mayor, the City of Hammond, and Left of Center. He argues the prior presider erred in severing the action because of significant factual and legal overlap among the claims, and because doing so would serve judicial economy.

Mr. Batistatos also asks the court to reconsider its order in the severed action dismissing his claims against the Mayor, the City of Hammond, and Left of Center for lack of subject matter jurisdiction. The court dismissed his defamation and injurious falsehood claims against these defendants under Rule 12(b)(1) because the severed case concerned only state claims, and no federal questions, and because diversity jurisdiction offered no saving grace. Without such a hook, the state claims could not be said to fall within the court's supplemental jurisdiction either. Nor would the factors of judicial economy, convenience, fairness, and comity favor the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c).

Mr. Batistatos challenges none of this in truth. He just says this dismissal order should be reversed, but only because his concerted action claim must be reinstated and the severed cases rejoined. The court must deny the motion insofar as it challenges the court's finding based on the lack of subject matter jurisdiction. The court defers ruling on the reconsideration motions to

the extent they challenge the severance, and by that fact alone, the dismissal of the then-severed action, pending a hearing with all the parties.

## CONCLUSION

Accordingly, the court DENIES IN PART both motions to reconsider [189 in 2:22cv254 and 209 in 2:25cv71] and DEFERS ruling on the desired reconsideration of severance (and related dismissal) pending a prompt hearing to be set by separate order. The court will address summary judgment scheduling and briefing at this conference, as appropriate, as well.

SO ORDERED.

February 19, 2026                                       *s/ Damon R. Leichty*
                                                        Judge, United States District Court